We're here this afternoon for arguments in Austin v. Staggs. Thank you Your Honour. May I please the Court, Richard Burke on behalf of Perry Austin, Petitioner and Appellate in this Court. Your Honour, as I intend to spend the majority of my time in oral argument addressing the issues surrounding mental illness, which are at the core of not all but so much of the issues here. And in doing that, my intention is to start with the issues which are a little simpler or easier to reach. In particular, I'm referring to the PATE claims and the ineffectiveness claims. I'm in part just counting up the number of different issues of deference and defaults to be dealt with, and also taking a leaf from the United States Supreme Court's book and avoiding discussions of 2254 D and E1, if at all possible. In terms of the PATE claim, and I'm addressing the two PATE claims together, both the pre-trial and at-trial issues. It is a strong submission, as Your Honours would have seen from the brief, that in this case, a bona fide doubt was created that was not resolved by the procedure undertaken pre-trial by the trial court, and that was only exacerbated once the case reached trial and the court received more information of the type that the DROP Court made clear should cause a court to reopen its inquiry into the issue of competence. Like the United States Supreme Court in DROP, this court may not need to reach the issue of the sufficiency of the pre-trial procedure adopted by the court, because what happened at trial, at the end of that process, in our submission, so clearly fell short of due process and denied peri-action. That's your answer to the assertion that your client's actually quite this desire to have the death penalty, and then when things get to the fore, saying, oh no, no, I didn't mean that, and then saying, yes, I do mean it, and then no, I don't, that that's actually kept him without an execution date or one that was cancelled, and otherwise no execution date for 15 some odd years. Judge, he was sitting in the TDCJ doing 40 or 50 years without any sort of a death penalty at all, when he wrote a letter to the detective saying, I will confess to this murder if you guarantee me that I will be prosecuted for first degree murder and you guarantee me I will get the death penalty. This isn't the case of someone who's been caught, gone through trial, struggled to avoid a death sentence, then got one, and is engaging in shenanigans or activities to try and mess with the system. Well, could I ask you the mirror question then? What about this is irrational to the state of being incompetent? A desire to die can be consistent with rational thought, and in fact a plan to execute that desire to die, execute's not the right word, but to carry out the desire to die, and done through sophisticated means, could actually show rationality, not irrationality. Can you address that? Yes, Your Honour. It's no part of our argument, and hasn't been a part of our argument, to ask this court to say that every defendant who wants to get the death penalty or wants to waive mitigation or wants to hasten their execution, having already been sentenced, is therefore necessarily incompetent. That's not our argument. Just as the United States Supreme Court said in both Pate and Drope, we need to look at the aggregate of circumstances suggesting incompetence, and particularly because I was starting out by addressing the Pate claim, the issue here is not just that the trial court, the Texas trial court was faced with a defendant who was patently seeking to conduct a trial in a way that would result in his execution. He'd also reported to the trial court multiple times that he had a very bad problem with depression, and was suicidal in his thoughts, and might not even make it to court because he might kill himself before then. And so the elephant in the room... But at that point he was in segregation, and he didn't like being in segregation, so there one could make the argument that was quite savvy to get him out of segregation, and once he was out of segregation in the jail, in the prison, he wasn't unhappy anymore. I mean, it's not that unreasonable to be just feeling like you can't live another 50 years in isolation in a prison cell. And if that's where we were, it's not our submission, and I don't believe we need to prove that everyone in that situation is necessarily incompetent. The point here, particularly for the Pate claim, is that nor are they necessarily competent. There is a doubt raised. The elephant in the room is, is this guy trying to kill himself? But if we do give deference to the state court, then you do kind of have to show, almost as a matter of law, that someone in this scenario is incompetent. If we don't give any deference to the state court and we start over again, then you may have a point. But I'm just wondering, if we give some deference to the state court finding of competence, implicit or otherwise, that alters the calculus a bit for you. Well, in my submission, it doesn't, Your Honor. Even if this court were to grant deference to the implied finding of competence for 2254D purposes for the substantive competency claim, and that was the issue the court asked us to address in granted to a due process claim, which is what the Pate claim is, a procedural due process claim, a claim that was never presented to the trial court, that the trial court never in any view adjudicated, and that the state court defaulted. What is the fact question that's specifically raised for the federal district court? Let's assume the federal district court credited everything that your expert said except the legal conclusion as to whether this constitutes incompetency to represent himself and plead guilty and stand trial. What is the fact question other than that legal conclusion drawn from the facts? For the substantive competency question, it is... What if the trial court credited everything that's in the affidavits? What's the fact question? Well, if everything was credited in the affidavits, Your Honor, then we would win regardless of the standard of deference to be applied because the evidence, both historical contemporaneous with trial and the expert reports offered by the defense, clearly demonstrate Mr. Austen's incompetence. I understand that the state doesn't agree. I don't understand how it's a legal conclusion and if the district court, the federal district court said, okay, even if they're correct about these diagnoses, I agree with everything they say except that when you match that evidence against what the standard for competency is, he doesn't get there. On my understanding of the federal district court's ruling, that's not what the federal district court did. The federal district court, in fact, doesn't discuss our affirmative evidence of incompetence under the substantive competency claim at all, but instead discusses the rebuttal evidence offered by the state, the supplemental affidavits of Dr. Brown and Dr. Allen, which of course... But from a legal standpoint, we're looking at the district court's ruling and you, I'd like for you to tell us if you can, assuming, let's assume we credited everything that's in your affirmative evidence, short of the the conclusory opinion, he's incompetent to stand trial, etc. What is the fact question? And we conclude, or the district court concluded, or we conclude that it doesn't get you to the legal definition of incompetency. I feel as if I'm not understanding the question, Judge, because... What is it about this defendant that he doesn't meet the legal standard for the trial period? Because... And he had a local brain injury. And because those things, as a matter of fact, substantially impaired his capacity to make a rational decision in relation to his self-representation, his plea of guilty, etc., in the course of the trial. I mean, you have a little bit of a problem because all of these experts are post hoc, and so those diagnoses by itself, as we've discussed before, don't necessarily get you the finish line. I mean, there have been people, there was a justice on the Austin Court of Appeals who committed suicide. I'm sure the week before or two weeks before, he was hearing cases, and no one suggested those cases should all be set aside because he was incompetent. People have depression and function and become lawyers, frankly, judges, all kinds of people have depression. So those diagnoses by themselves don't tell us anything. I think that's the point of Judge Owen's question, or at least the point of my question. So how do we take that and say those diagnoses at the time of trial therefore overwhelmed him? Well, Your Honor, let me answer that in two ways. First, the expert opinions that we've offered do seek to bridge that gap and justify how they are able to infer, without having seen him at his condition and the level of impairment at trial. Dr. Woods, in a detailed way, particularly in his second affidavit, explains how he is able to draw that inference back to that period. But the second thing I would say is this. I would be the first to concede how difficult it is to investigate and prove incompetence in a non-proton setting, coming back afterwards, particularly with the relatively nuanced question of to what extent did the mental illness impair rational decision making? That's why our system sets up the procedural due process standard that it does. Where there's a doubt, the court has an obligation to conduct a full inquiry at that time when a full inquiry can be conducted. And it's why the United States Supreme Court in both Pate and Drope said we're not six years later going to have a non-proton hearing because it's too hard to have a reliable hearing. But what in this case gave the trial court a doubt during the time of trial? You mentioned that he had had depression during his ADSAG time. He told the trial court that he was better. Didn't he? No, Your Honor, he didn't. I thought he said that he was better now and he had been depressed but he was better. And the trial court had the opportunity to observe him and he was in extensive correspondence with the trial court and making normal types of requests that you would do about his clothing and this sort of thing. And so isn't the trial court in the best position to determine whether the trial court had a doubt or not? Well, the entire process is set up for us to review whether the trial court should have had a doubt and the test is an objective one based on the evidence. Why should the trial court have had a doubt in the face of someone so able to do what he needed to do at the trial and this is not a situation where some of these very unfortunate situations are where the person is seeing ghosts or UFOs or whatever. This is not that kind of situation. And the mental health professionals have relied on are at pains to point out that there are these floridly psychotic cases where it's going to be pretty obvious to everyone but there are impairments like Mr. Austin's where it's not going to be as obvious what this court referred to in Rhombar as volitional impairments affecting the rationality of the decision making even though the person can be somewhat functional and has a logical understanding. But in this case to answer your question, in this case the court was faced with a man who was saying I'm very depressed, I'm suicidal, I might kill myself before trial and I want to waive counsel and have myself killed. The court undertakes some sort of a procedure, has Dr. Brown see him for about 20 minutes as I understand it. Dr. Brown isn't aware of these letters talking about depression, never addresses with Mr. Austin in his report or his interview what about these letters and about the depression and suicidal feelings. Is this all about you being depressed and suicidal, mentally ill suicidal or is this about you being someone who's made a wholly rational decision to kill themselves and also happens to be a bit depressed. That didn't happen in the Brown report, it didn't happen in the colloquy and Mr. Austin turned up at court and said I have no history of mental illness, I had no problems with mental illness in the army and the matter went forward. They get to trial and at trial the judge then hears he has an extensive psychiatric history dating back to childhood including multiple suicide attempts and severe depression. He is described in the paperwork as a very disturbed individual, he describes himself as having a psychiatric and counseling history and what the court hears then not only increases the amount of concern and doubt but the basis of the court's earlier satisfaction, he has no mental illness, he told Dr. Brown he has no mental illness, he told me no mental illness, now the court finds out that's all false. Mental illness is not incompetent. I agree your honor and that's not what I'm saying but it is extremely relevant in a Pate scenario thinking about the doubt that's raised to have conducted some sort of an inquiry and been therefore I don't have to worry about the fact he's trying to kill himself. I don't think that the court necessarily was convinced that he had no mental illness, I think you're conflating again competency and mental illness. The court doesn't have to be convinced that he has no mental illness, the court just has to consider that he can make rational decisions on his behalf. And I'm definitely not trying to conflate those two things so if it sounded like that I expressed myself poorly. What the court found out at trial was that it's not that he had no mental illness but he had an extensive history and had lied about it to the court in a colloquy in order to be allowed to represent himself and kill himself and that the psychological report the court had relied on was predicated on false information, no history of mental illness and a lack of relevant information. But this was to carry out his plan which says I'm not incompetent or and you're certainly not going to be able to prove that I am. Right. And so that shows a rational thought process doesn't it? It doesn't show doubt it creates in fact it shows strategy and a complex level of thought doesn't it? And your honor in my submission there is nothing about the fact that he was able to engage in multiple steps even if some of them show some complexity that is in no way inconsistent with his depressive illness and his frontal lobe syndrome having substantially impaired the rationality of his decision of whether to get himself killed or to proceed more regularly with a trial. I disagree with this decision more than that it's irrational but I want to ask you a point which is in addition to finding out this about his background the court also got to observe him. And here he is the main concern he seems to have is that he will be characterized as a pedophile for his relationship with a teenager that in his view in his perspective quote looked older in other words looked old enough to get into a bar and all of that and so he was very offended by the label of pedophile which is very rational and less offended if you will because he didn't view himself that way less offended if you will by what he did actually do which was you know murder decay. So isn't that rational in a sense that again I'm not in any way finding it appropriate to have sex with a 14 year old when you're an adult but his concept that he's not a pedophile when he does that with a quote girl that looks older doesn't seem wholly irrational that someone would not want to be labeled a pedophile. And judge when you when you're talking about a rationality there what that speaks to to me is someone who's got a thought disorder whose thoughts are tangential whose thoughts are not linked in a logical connected way they're irrational in the sense that the phrase is used to describe that person and so they're talking about butterflies in court when the evidence is about pedophilia and he wasn't doing that. We've had cases where the defendant did do that and they were found competent to stand trial competent to waive counsel that they weren't delusional they were having extreme flight flight of thought. These cases are so fact-bound around the individual circumstances of each one there's we certainly can't compare one defendant in a reported decision with Mr Austin or another because we have to look at the individual circumstance and it's not it's not our case it's not what's advanced by the mental health experts we relied upon that doing asking for the death penalty per se means that you were incompetent. Dr Woods makes that expressly but he's also satisfied based on his extensive examination that in Mr Austin's case it was and it certainly begs the question and that's what we're talking about with the Pate claim is it begs the question it's not you should be satisfied he's incompetent it's shouldn't you make an inquiry shouldn't we check whether or not this is about mental illness or something else. Okay let me ask you this do you have do you think the Day versus Quarterman and Woodfox versus Kane line of cases that say uncalled witnesses are disfavored and you have to show that these witnesses would have been available to testify do you think that bears upon at least your ineffective assistance of counsel claims on this competency issue that you have to show that and if so have you shown that? Well your honor I don't think I don't see those cases as having any application to the present situation. The ineffective assistance of counsel claim is another one that provides a vehicle for looking at this case through a different lens we don't have to prove incompetence it's where the system fell down and that's why we're in this tricky position. Counsel undertook no investigation interviewed no witnesses obtained no records took no steps at all would that material have been available at the time unquestionably not where does it say that because we have pretty strong uncalled witness law under Davy Quarterman and Progeny and Woodfox applied it to an expert that says you have to actually have proof that this witness not just some witness but a this witness would have been available to testify at the relevant time so is there's I didn't see it but I could have missed it so is it in the record that that the these experts have said it would have been available and would have testified at the at the time of the whatever confidence the inquiry there was to this effect well I think I would start one step back from the experts in relation to the deficient performance and the witnesses it starts with the historical records which were clearly available then the contemporaneous witnesses and we have affidavits from his counselor in the Harris County Jail where he was experiencing all sorts of symptoms of depressive illness etc who was clearly available the prisoners he had been spending time with through this period as to his mental state and decline who were available and then the experts these are we relied on for mental health experts there is is there evidence in the record that they were available to testify at the time of the state court trial just just answer that without regard to whether there should be such evidence is there it's it's not something that I've looked at in probably 10 years since we've put together most of this material so if you'll accept that caveat from me I can't remember a sentence in any of their affidavits saying and I would have been available at the time of trial and would have done that but nor do I believe that that would be required in this case our time is running short I have two more questions one of them is returns to the question that judge Owen asked you about that there was some confusion on at the beginning of oral argument what is it that would that there needed to be an evidentiary hearing on what is the disputed fact if we look at all the materials that you have submitted what is the disputed fact that you need to key up testimony on if we just take the whole universe of the facts and say those are the facts what is the fact there are three main there are three main areas of disputed fact between the parties in this case one is the medical and psychological evidence as to whether or not Mr. Austin suffers from these mental illnesses but it is what it is we don't need it's not disputed testimony such that's the conclusion that's in dispute well it is disputed the state that sought affidavits from Dr. Brown and Dr. Allen that it filed with its answer calling out my experts and saying that what they said was nonsense and we filed follow-up affidavits saying no they're being ridiculous and even taking all of it together what's the disputed fact whether or not he suffered from a mental illness whether or not it substantially impaired him at the time of the trial in that they substantially impaired his ability to make rational decisions along those lines is there any evidence you're hearing that's needed on the juror questions i haven't asked you about that i'm sorry did i that was my second question good what your honor uh ordinarily there might be uh but the state has joined no issue of fact on that and well they said that the statements such as they are which are unsworn uh don't engage with the fact that so basically these jurors um if in fact what they're saying is that they lied at the trial they were under oath when they i presume since everybody's all sworn in for vore dire uh so then they lied under oath and they've admitted to perjury and i don't know if anybody's questioned them on that and they didn't say that they lied at the trial they say oh you know i think any guy that kills a nine-year-old dude deserves a death penalty so on so they don't and i was lying to get on the jury back in 2002 or whenever it was so do we have evidence to consider that that would matter here and if we do then do we need a hearing we absolutely do not need to produce a confession of perjury from those jurors to win our claim and the statements from the jurors are specific to mr austin's case not a general theory about the death penalty in mr austin's case there was no way i was ever going to vote for anything other than death once he was found guilty i regard death as the only penalty i think the question is do we need a hearing for the that person who could understand the state to cross examine and you to ask questions or do you think we should reverse on this record you should reverse on this record the state has had an opportunity to present an alternative argument about what those jurors were saying or get statements from the jurors saying oh but what i meant at the time was this and they haven't done that there's only one set of facts advanced and we're submitting it to your honor for ruling uh on that assuming that we read this and there isn't a contradiction that all of it could be true at the same time that they could have viewpoints about what they did and like anybody say well i really didn't have a choice once i heard the case i was going to do this such and such coming in after the fact doesn't mean that and having certain views about the death penalty in general doesn't mean that you didn't tell the truth when you took an oath to consider mitigation evidence if the court gave it to you but those are not in conflict they they have conflict at the margin but you can resolve those they're not actually directly engaged if we were to believe that this was not directly engaged conflict do you lose uh not quite to the extent that you just described but i certainly take your point um but the statements as i recall them include the the jurors are talking about how they felt at the time of trial not wow once i got to the end of that guilt phase i really felt like all i could do that's not what the statements are i've presided over a lot of war diars and i'll tell you that's a hard thing to parse for jurors you'll have lawyers get up and tell the facts of their case which are that their client isn't really all that injured and they'll say would anybody have any trouble awarding a million dollars in in an hypothetical case and then you know half the jury raises their hands because they're thinking about the facts that they've just heard not just any old case where somebody has some terrible event you ordinary people don't make those kinds of distinctions between like what i thought the morning of versus what i thought five days later and it's not clear to me from these statements and and maybe you can point me to where they're saying the morning of or dire i lied because i thought this at the time not just after i heard all the evidence well if what if it's not clear to you from the statements your honor it may be that we're about to lose but uh because that's what uh our submission is that it is clear that that was the state of mind at the time and this is a very different topic than uh jurors being brought in to be asked about a million dollars that they probably haven't thought about before these are jurors who had strong views about these particular issues of the death penalty and this court has already knocked out some of the weaker juror statements at the coa stage you kicked this out on some of them because the court held that they didn't indicate they wouldn't consider mitigation or would only consider death in those ones and so those ones uh have already been put to the side but for the ones that we have your honor our submission is that it's very clear that their views are strongly held long held views and that they were held at the time and the jurors have said they were held at the time and that that's how they proceeded and if they'd answered correctly at the idea there would have been a cause challenge and it's not surprising the jurors with this level of extremity of view made it on to this jury when you look at the 61 consent challenges to remove anyone who might uh assuming there were bias is a bias of the juror of the nature you've described is that structural error yes yes your best case i'm sorry your honor what's your best case it says it's structural error uh i believe your i i believe we've cited it i believe it's in the uh in the materials i'm going to make a fool of myself if i try and do it off the top of my head okay if it's not structural error uh what mitigating evidence was presented to the jury none none no mr austin represented himself he asked for death and he's no evidence was presented he asked for death uh he told the jury i believe that if he if they didn't give him death that uh he would tell a guard and so they'd better give him death and i think that to the extent that anyone talks about this issue of the pedophilia and the 14 year old girl he had the relationship with uh he explained that to the jury in terms of his preference for receiving uh analyticals rather than um providing that and i don't think anyone would regard that as mitigating evidence for harris county jury i wasn't clear to me at some point it's somebody's brief said that confession or videotaped or taped statement he read on a certain date was read and it wasn't clear to me whether it's the jury or the court but in that the course of that he was talking about his past mental illness his past depression i think like that was somewhat mitigating i'm sorry you're you are you are quite right i stand corrected judge i was really thinking about the penalty phase and i shouldn't have been in his interview with sergeant allen his second police interview with sergeant allen uh which was an exhibited trial and was played to jury during the guilt during the guilt phase uh he mr austin did describe that he had been in psychiatric and counseling since his childhood and that he had suffered from depression a transcript of that was included as one of the exhibits with the habeas petition so it is transcribed and is one of our exhibits and so yes that was read to the jury that tape was played to the jury the appreciate your correction because you're quite right that information was before the jury if if we were if we look in some context the supreme court has said that there's got to be a reasonable probability uh that the outcome would have been different can you meet that standard yes your honor and uh what the supreme court said a reasonable probability probability meant was not a preponderance what they said it meant was a probability sufficient to undermine confidence in the outcome and in our submission that phrase captures what's happened here where you've had a trial proceed on the basis of wholly inaccurate information about let's just confine this right now that you're past all that and i'm not saying yeah i'm just asking segmenting this and let's suppose that it had come out that the juror said well once i know that you killed a nine-year-old person i can't think of anything mitigating and let's assume that was grounds for cause would mr austin have moved to strike the juror i mean do we look at that sort of thing that's my question uh no your honor i don't believe that it's necessary to prove that and the court would have acted to eliminate the juror if he really truly wanted to be put to death well do we even look at that no your honor because the the claim is in relation to the sitting of a biased juror and this is a jury and this is a jury that is biased in the sense that the united states supreme court referred to in morgan versus illinois we had at least one and more than one juror so predisposed to death that they're that they make that by a standard and that is in my submission the end of the argument if there be a prejudice assessment less assuming that defendant clearly did not want to be put to death but do we get that far in a case there's evidence that this defendant didn't want to proceed the death penalty is that relevant that's my question no no your honor the our constitution and our law doesn't allow us to put up an an unqualified juror just because one of the parties wants to proceed with an unqualified juror and a juror who is unable to consider both penalties and the mitigation constitutionally required to be considered is not qualified to serve but assuming you have to show prejudice what case shows establishes prejudice in this situation well that's in my submissions that's one of the reasons why i don't think we have to show prejudice but assuming you did have to show prejudice do you lose no and and i think i'm asking you for your best case say that you hang in on prejudice okay and so if we're there this is your opportunity to situation we would have to show prejudice on the jury issue the court would unquestionably have struck the juror for cause that juror would not have sat another juror would have sat and both that individual jurors vote and that jurors influence on the deliberation of the other jurors would have been entirely different but it would have been deliberation over a guy who said give me death or a guard dies you know it doesn't take a whole lot of bias in favor of the death penalty to rule for the death penalty there the jury in the con ue case two days ago just uh returned uh what resulted in a life sentence for someone serving murder in the bop who stabbed the guard 200 times and just two days two days ago he was sent to life because the uh the juror at least one juror uh wouldn't vote for death there is no case so bad and a a having heard that he had a psychiatric history and a counseling history a more favorably disposed juror hearing that and then hearing him beg to be killed in that way uh may well have had more reason to return a life verdict because of their concern about how obviously mentally ill he was our questions have caused you run over time if you save time for a better one we're going to add add time appropriately i appreciate it thank you very much may i please support in explaining why this court should affirm the denial of austin's uh petition for habeas i'd like to start as we did previously with austin's competence because that cuts across most of his claims and i'd like to begin by by suggesting what i believe is an efficient way to consider this question and the myriad edpa issues that are attendant to it and that is essentially to start at the end to ask whether there is a question of austin's competence considering all of his contrary evidence and with no deference to the trial court if the court agrees with us that there is no question there then that question is at an end however if the court thinks that there is a real question at as austin's competence then it needs to step back and ask whether or not that question is one of fact or one of law if it decides that it's one of fact then it needs to ask whether 2254e2 prevents austin's reliance on new evidence in federal court and whether austin has overcome the presumption of correctness if however the it then needs to go one step further back and ask whether or not the paid claim and and the dusky claim were adjudicated in state court if it decides that it was adjudicated then cullen v pinholzer prevents new evidence and d1 deference applies if it decides that it was not adjudicated still must consider whether 2254e2 was never adjudicated he did not at he did not claim in the state trial court that he uh that the procedures the pay hearing and all that did not afford him adequate due process so that claim was that claim was denied as a procedural matter and you haven't even contested that oh i have your honor uh in fact we have we have said that all of all of the claims were in fact uh uh where and when the state trial court was on the due process claims that the hearings that were held were inadequate for various reasons you know the when when the trial court uh uh proceeded to to trial without holding a competency hearing it necessarily determined that there was no bona fide doubt and that none was well those are two separate issues it seems to me your honor they asked the same question whether or not bona fide doubt exists that requires a hearing uh and when and they're saying the trial court through no fault of the trial courts arguably that there was no he had no she had no reason to think that there was any history of mental illness and had she had all of that there would have been a more searching examination by someone other than dr bound perhaps i mean the i'm here full-blown competency hearing that's correct your honor but the paid claim only asks what what was before the trial court it doesn't ask what could have been before the trial court and when and when and what what the supreme court in townsend be saying says is that you assume that a state court knows the constitution and applies the constitution correctly and so when when the state court proceeded to trial without a competency hearing it necessarily concluded that none was necessary and that is and uh it if you consider that a question of law that is an adjudication of of that issue of that question but it's actually a question of fact it is this was the very issue in in maggio v fulford which in which the supreme court reversed this court and it held that a that determining whether a competency hearing is necessary is a factual conclusion and shortly thereafter this court started applying maggio to to that question and said that it was a question of fact what seems to me that their argument is something you'd almost have to raise at the habeas stage because it depends on evidence it was outside the trial court record in other words nobody often affirmed we said i don't have a mental health history i've been fine all these years that's not in the trial court record it was only after trial after conviction that this came well some of it came out at trial actually but your honor again a paid claim only depends on what's before the trial court outside evidence is not relevant to it if you you can't say well if the trial court had known this because the question is an objective question about what the trial court did know and how the trial court acted on what it knew there there was simply no role for outside evidence to play in in a paid claim and uh as as what about the inspective assistance of counsel claim that was not ruled on by the state court well yes your honor and we're not we're not claiming that that was uh uh adjudicated that is one everything was no sorry i meant the pate and the dusky claim were uh the the iatc claim is the loan is is the only legal question in this case and it is it is the only question that was not uh adjudicated by the court but as the court knows substantial deference still applies in that case what is your take on my you know i asked your opposing counsel about day versus quarterman and woodfox versus kane about uncalled witnesses what's your view on that well your honor i i would say that i would i would agree with him that there is no evidence that that there were witnesses that that could be called that they have identified no okay so is that just positive of any of these claims because you didn't really make that argument well no no your honor we didn't i think it is but it we didn't because we don't need to get there because the the i the iatc claim has no merit that the the iatc claim is the day would fox line of cases relevant only to ineffective assistance or would it apply more generally to a situation where the uncalled witness would be pivotal to the outcome of the habeas contention i i think that that as far as if you if you are on on habeas and and you need to show at the end of the day that there is a then yes then you would need some evidence that those people would have actually been there to to testify so if the standard for any habeas claim has to do with the reasonable probability of a different outcome then the day would fox line of cases applies if that's not relevant then that's then that line of case identified that's your yes your honor okay and what case uh your honor i can't uh uh oh the i mean the the case that i'm that i'm relying on for that is uh i do apologize your honor it is it has slipped my mind but it isn't it is a it is multiple supreme court cases that say at the end of the day at in habeas the question is even if you even if you decided that that the state court applied an unreasonable standard and reached the wrong question you still have to reach that final question which is whether there's a reasonable probability of a different result no but i'm asking layering because it's our line of cases that is this uncalled witness line of cases how does that get because those tend to come up in ineffective assistance of counsel cases i'm asking do you have a case that divorces it from ineffective assistance and applies it to just a standalone type of claim like like the ones we're hearing here i do not your honor okay but you think it does apply i i think that you cannot reach the final question in in a habeas case as to whether there was a reasonable probability of a different result in in the proceeding unless you can show that these people would have been there to say what you said it doesn't have to be those doctors it just has to be somebody well it has to be enough to reach a different result it can't just be anything uh and and and and that brings me your honor uh ultimately to the standard of of competency in in this case so the the the supreme court in godinez explained that the competency to check to stand trial inquiry has a quote modest aim unquote and it said that the inquiry sorry it said that the focus of the competency inquiry is defendant's mental capacity the question is whether he had the ability to understand the proceedings and now as as this court well knows the the evidence in the trial court was his cogent letters to the district court his lucid interaction with the trial court a witness and the jury and the opinion of his counsel and the opinion of his expert these are the very categories of evidence that the supreme court and this court have repeatedly set are the universe of evidence you consider when looking at competency that's observation the opinion of counsel and the opinion of an expert austin has brought evidence of his mental illness but mental illness is neither necessary nor sufficient to show uh competency to stand trial it only matters to the effect that it causes somebody to be unable to understand his or her proceedings and so austin also brings dr wood's opinion but dr woods's retrospective opinion on austin's competence should have no weight because it applies the standard of competency that is untethered from case law if i could give this court just a few examples of what dr wood says he says quote mr austin certainly understood the factual issues of his trial he knew what he was being charged with he understood the potential consequences in fact he was capable of managing impressions and sought to minimize the appearance of mental illness to ensure that his planned death could proceed austin understood his options and he goes on to say austin clearly understood the charges he was facing since he was trying to undermine that very process nonetheless dr wood says it's possible to demonstrate competence and yet still not be competent he says that this may be the case even though a defendant's understanding of his options is not impaired by mental illness this is not the modest standard that godinez talks of this is the enhanced standard that the ninth circuit applied in godinez and that the court in godinez rejected but what do you make of the fact that even though the court has the opportunity to observe him he's representing himself and all that the court is suddenly hearing things the judge is hearing things that are inconsistent with what this person just told the judge two days ago that i mean i didn't preside over death penalty cases as a trial judge but i know that would get my attention i might not remember something someone told me three years ago in the case but if i've just had a pre-trial hearing and they said oh everything's great no mental illness and then wham i'm hearing all this stuff about mental illness i'm gonna call them up and i'm gonna say what's going on here well your honor austin had previously told the trial judge that he was depressed this was not new to the trial judge and in fact what what the trial judge was seeing was well that's quite a bit different from saying i've been treated the army discharged me i've attempted suicide well to be fair your honor most of those most of that evidence was in documents that it's not clear that the trial court had right in front of it and was and was reading directly from there but even with that number one it would say austin was mentally ill which as we've already discussed that does not really mean anything for competence unless it causes an inability to understand the proceedings second it would show and it would it would dovetail with what austin had already been doing yeah but your opposing counsel is making a little subtler point and maybe it's not a winning point but the point is you now know as a judge you didn't have all the information you thought you had you thought you had everything's cool we don't need a competency hearing because we've got dr a problem we're good they had a little depression being in segregation who wouldn't and we're good to go now all of a sudden the judge is hearing in that interview with the police sergeant or whoever it was in trial something different and it and it's not that far apart in time so we're not talking about you know this was five years ago and the judge has forgotten so it would seem like the judge then has a duty of inquiry to say hey please square this up for me i thought you said you had a mental illness problem i thought this i thought that but now i'm hearing something different your honor we have cited multiple cases in our brief of of defendants with far worse symptoms and far more obvious mental illness where numerous courts including this one have held that there was no duty on the part of the judge to inquire into incompetence the the the point is whether or not he has the ability to understand his proceedings and while finding a an extensive history of mental illness may update your probability on on whether or not he he is incompetent that combined with the observation that the judge had through his letters through the court through the opinion of his counsel through the opinion of of his expert is simply not enough to to overcome that the fact that he had mental illness when he had consistently demonstrated the ability to understand his his proceedings um if i could judge has thought that well the guy's lying but he wants to be executed so this is a strategy call yes your honor and i and i think that that is reasonable i mean that's not it doesn't give a duty on the judge to do something different quite quite the opposite your honor i think that if if the if something can reasonably taken as evidence of rationality that that cannot impose a duty to assume irrationality and i think the the abdu mutallab case from the sixth circuit makes this clear where the gentleman wanted to blow himself up and blow up an airplane the court didn't say that that ultimate choice was rational the court looked to what he did leading up to that choice was was he able to to reason logically to to make a plan and carry it out and that's exactly what austin did in this case and now austin here and and his expert his expert if you look to dr woods's affidavit his first affidavit of pages on that's exhibit 95 to the to the petition the evidence of austin's irrationality is almost exclusively austin's depression and his desire to die for his crime and now if i could i i would like to read just a couple of of case sites to your honor the first is malinakis v united states which is an opinion from this court although there was testimony to the effect that petitioner was self-punitive behavior there is nothing in the evidence which would have caused the district court to conclude that petitioner was mentally incompetent in the ninth circuit in in the butco case quote evidence that dennis's decision is a direct consequence or product of his suicidal ideation is not meaningful evidence of incompetency and those who are both in in addition to taylor v horn and hunter v bowersox which found the same thing from the third and the eighth circuits so what would be enough to get this judge's attention what what are you saying would be needed so let's say we have the exact same competence inquiry that occurred here what would have to happen at trial to raise the red flag that would be enough that that if a judge didn't respond to the red flag would be enough to sustain a habeas challenge well your honor i uh that some some evidence i mean the one of one of the examples that we provided in our brief was that if somebody believes that that that he is protected by god from earth from earthly punishment and so he can submit to the death penalty and not worry about it then that that is evidence of of irrationality if he thinks that he is in that he's in some other uh uh dimension in which he will soon return back from you know after this trial that is evidence of of irrationality or if you simply i mean the most basic if he demonstrates that he doesn't know where he is that he doesn't know what's going on that he doesn't know who these people are that is all evidence of of an inability to understand the proceedings there is none of that here counsel i have two questions you had asked you said we could they go back to your roadmap which is laid out at the beginning sure your honor um you said that you could take start at the end which was kind of what we were asking opposing counsel about if you assume no deference and you look at the totality that um you believe that you still win um are you asking us to write an opinion that says no deference or is this an assuming arguendo are you asking us and i'm not foreshadowing or are you asking us to go through all the various steps of whether there should be deference or not your honor what what i am what i am proposing is either a short opinion or a long opinion there is there is there is a firm that's what you're proposing there is a short opinion that says we don't need to consider whether or not this is a question of law or a question of whether or not 2254 e2 applies or whether colin applies because no matter what he fails but what the court can't do is assume all of that away and then rule for him okay then my follow-up question is what if where does it fit in your paradigm that you've the flow chart that i've made if it's a mixed question your honor a mixed question is a question of law and so when i say you put the mixed question on the law side you didn't get to give your side your last little thing on your decision tree that we asked you questions we did yes and you said d1 and then you were going to know and you didn't tell us the answer for that one sorry your honor if if the court says that it is not an adjudication on the merits it still needs to determine whether 2254 e2 uh bars austin from offering new evidence in federal court because he was not reasonably diligent in developing that evidence in state court uh isn't that a little bit of a catch 22 when you talk about competence so we have not only the competence to plead guilty and stand trial but also the competence to waive counsel and act as his own counsel and so if he was incompetent to do that then his lack of diligence as his own counsel seems to be kind of weird to hold that against him can you resolve that well your honor that's interesting question it's not an argument that austin has made and so i would urge the court not not to reach that question but what i would say is that what williams v taylor says about 2452 e2 is that it looks at fault and fault is a different question from competence fault is much more looking at criminal responsibility i i think would be the more a causal fault right i didn't do something and therefore this happened well it seems to me he he made the filing based on what everybody thought was that he had up until a certain date to make a filing he made a filing and then the next court comes in it's now it's late sorry your honor that's not the fault that i'm that i'm talking about here i'm talking about the fault at trial and so the williams v taylor says you have to exercise reasonable diligence and so you don't you don't pick any individual proceeding out and ask whether the person exercised reasonable diligence you look at it all and so this court would have to say that it was reasonably diligent for while the court was considering the issue for for mr austin to not only hide evidence but to lie and then to wait until collateral proceedings if he actually were incompetent and he failed to raise his own incompetence i don't think that's a too much for me i'm sorry your honor that that gets back to is much more of whether you're going to hold someone responsible and so and it's and it's a different inquiry and it simply asked whether austin knew what he was doing was right or wrong and in his brief he says i was trying to trick the trial court i mean it is it he he knew what he was doing was wrong he cannot escape the fault for that it is in and i would also say it is it it flies in the face of the comedy that's owed the state court to do that to say that a petition or can knowingly lie to the trial court hide evidence hide the ball and then come and say and then file his his his petition later in fact incompetent then that excuses that again i don't think it does i think that's too well i will i will i will move on on from okay let's stand by counsel were they gone by that time no statements well uh during no standby council was there when he waived habeas uh and was there when he was there the whole time so they would have the duty even if he didn't do it well i don't think that if they thought he was incompetent and he couldn't if we have this problem because he's too incompetent to do what he needs to do to protect his rights and it's about his incompetency then why isn't the standby council on on the hook for that part of it this is all it all kind of comes comes together as as as this court held in its in its opinion denying the coa the standby council is really not responsible for anything for nothing even if they observed that he is talking about ufos to him in the in the breaks and right and doodling things about he's being taken up in the clouds tomorrow or something well you is that true i don't wish to say that a council should stand by and and let that happen there's i'm not trying to be flippant about mental illness by any means in the in the shortness we have in question asking sure and i'm not saying he did any of these sure it's a hypothetical sure your honor the there i'm i'm not trying to to suggest that council would stand by and let that happen and in fact the fact that standby council never said anything about his competence to the entire trial is still further evidence that he was not incompetent but at the end of the day that because that demonstrates the council believed he was competent he would not stand up and say anything about about his his refusal or his waiver of a couple of times in the briefing that uh there was money there to hire an expert to examine mental competency his council asked for that and got it and then didn't do anything is that true uh your honor his his council uh motion for an uh examination and furtherance of a mitigation uh investigation he filed it nearly a year before trial when he was discharged from being austin's council there were still six months before trial there was still plenty of time to conduct a mitigation investigation as far as i know he had not begun one uh besides the the filing i thought they talked about aside from to probe into his mental capacity that that's not that's not my understanding your honor that's what they said my my understanding is that is that they're saying that in fact he made no effort to seek out these these people that all he did was file a motion to get funds to seek out experts for a mitigation uh uh investigation it was the expert that he then identified who was the one who was to be hired and then the court hired dr brown so there wasn't any reason for the council to hire dr brown because the court hired dr brown well and you you hadn't gotten to to mitigation yet anyway because austin had asked for his counsel austin's council specifically identified dr brown asked for him by name yes your honor so when they said the court appointed him is it the court paid him or the court appointed him at austin's request the court signed the proposed order that austin council the court funded expert that he chose that that's correct it's like an ime regular civil cases where you take the little doctor who's going to examine the person and the judge signs the order but might google on the bottom of it this is not the court expert if they want to make that clear as as best i i can tell your honor this was an an expert who was who was available and identified so the court said this person will uh examine austin's uh competency to stand trial well there's some reference maybe not your brief i can't remember who's briefed if he was an independent the court chosen i think there is a distinction here the right your honor eddie talks about the state doesn't get to choose the i would say that i i did in my brief call him a neutral expert that was a mistake on on my part he was chosen by austin's well i think your counsel obviously is making a very fine point that it that austin's counsel asked for dr brown no question about that and then instead of austin's counsel going out calling up dr brown and hiring him the court entered an order appointing dr brown as the doesn't matter if it's the same dr brown and so i think that's to me that's a fairly fine point that i'm not sure there's a whole lot of case law and when there's when you suggested that when the defense suggests the doctor that the court then appoints does that somehow not make it a defense expert that's what i mean your honor i i think i think the court may be reading in a claim that's the the the focus on on whether or not austin's counsel sought out the expert or whether it's the lead of their reply that's all i can say right you think that's a big deal and i don't sorry your honor i didn't i didn't mean to suggest that it's not a big deal i don't think it is i think it's a mountain out of a molehill but the first thing that i want to say is that it goes to his iatc claim not to any thing about whether the expert was proper or well it does the process it's one thing for the state to appoint and this is i haven't looked at the cases i just know post post conviction for execution purposes it it can't be a state appointed expert your your honor austin has chosen it's got to be the defendant gets to choose his own expert to examine his own competence you're also your honor austin has not argued anywhere that his due process was denied because of the of of the i thought he did i mean it's page one of his reply reading for we can all read it i i actually want to make sure that i ask you about the juror issue but i don't mean to cut off obviously my colleagues but i wanted to ask you about the juror issue kind of getting back to fault obviously a a sort of what we'll call real defense lawyer would have gotten up and done a super thorough or dire in a capital case that would have lasted days and all of that questioning everybody individually and we don't know what that would have yielded and i don't think if he is competent that mr austin can complain about his failure to do the kind of what i'll call real or dire but that said there were questions asked about being fair and if the jurors lie then we have a problem so how do you square the juror statement let's assume we consider them the equivalent of sworn statements how do you square those with the answers to the questions that were asked about mitigation and fairness and all that at trial at more dark sure your honor first they are they are description of their of their views as ordinary citizens not as jurors secondly nearly all of them are framed in terms of evidence that they learned after voir dire and so could not have been very ambiguous at least on that point i'm not saying uh if i if i could quote your honor finnegan once austin was sorry oh gibbs gibbs said once i heard that perry austin had admitted to intentionally killing a nine-year-old boy one says more than that well he he does your honor but i think it's it's important that to consider that part but he said other things too that's correct your honor and my and my next point is that none of them said i lied and so without that it's not evidence that they lied everyone why don't we send it back on evidence you're hearing put these people on the stand and you can look them in the eye and go all right are you admitting that you perjured yourself in a court of law in 2002 then you can get an answer okay but we don't really have that one way or the other and so do we have enough here to raise a question that would send it back for an evidentiary hearing so you can have that look them in the eye moment there are two two reasons why why the court should not do that the first is that if if you assume that austin was competent if you find that he was incompetent maybe you don't even reach this question if you assume that he was competent then then judge then judge owens concern about 2254e2 does not apply and austin's failure to ask a single question of of the jury demonstrates that he was not reasonably diligent and therefore cannot introduce new evidence in federal court the second question that assumes that nevermind i'm not going to interrupt you go ahead sure your honor uh the and the so just to go back to that one second austin argues well i didn't have any evidence that would have caused me to ask about this but that misses the entire point of why dire the entire point of why dire is to ask questions to get information that you can then assuming they had just said yes we can consider mitigating evidence and we we can decide life or death in response to questions one and two we can do that so why would he have any reason to think otherwise your honor in order to to get past e2 this court would have to hold that it was reasonably diligent to not ask a single question of of a jury i and and i just think that is they had said in response to his questions no we can consider that we we will give we can we'll listen mitigate evidence and make a decision but we don't know that because he didn't ask any questions right that he that already answered the question there's no i don't see where that gets me so if he just asked for the second time he he would have gotten the information your honor for for example he could have asked how do you feel about somebody who killed a child does that change your view how do you different issue i'm setting that it is because it's this exploration of jurors that leads to information let me ask you the same question i asked um mr austin's counsel if there's your advice is that structural error structural error uh i believe that it is your honor it is yes you're off the case it says uh the the case that that uh again your honor i i think it's uh fulman on tv arizona that says there's a difference between things that happened during trial testimony things things like that and things that happen kind of out outside of that where you just it's really hard to to reconstruct things and i and i think that this is this is one of those those cases are you saying that this should if we don't agree with you on the e2 point no your honor i have one more point send it back to for evidence you're here or you just move on this point what no no your honor i think that that uh even if you don't don't agree with us on on e2 austin still has to come overcome the the presumption of of correctness in this case and uh that that requires clear and and convincing evidence and that is not here even if the jurors had said i lied at going to apply the law to the facts and one statement saying i was not going to apply the law to the facts and as this court has said the burden to present clear how do you ever show jury bias then that seems that just doesn't seem right to me it was great your honor as we as we pointed out in our brief this is not a typical case of jury bias well even in which was it mcdonough but it was that was the guy just he didn't intend to lie it was an honest mistake it was a mistake but that was a historical fact your honor these those those are the cases in which you have juror bias in which you can show this you you say this person lied about historical facts this person wasn't lying about his state of mind something we can never really know that having an evidentiary hearing wouldn't tell us anything you would say well i really meant such and such on that day back then and i meant this two weeks later and i meant this after the trial so there's no way that evidentiary hearing would ever clear up what the state of mind was no your honor and this court has said that conflicting evidence is not clear and convincing evidence and the most that austin would ever be able to show is conflicting evidence you would always have statement under oath that they were she lied about something she wanted a prior relationship and she she did not tell the truth what about east georgia he wanted to get on the jury and convict this guy we don't if we accept some of the statements that face values they were going to convict him no matter what that's that's a historical fact again your honor that that can be proven and that where there is clear and convincing evidence about the relationships the historical fact as opposed to my opinion on the death penalty yes it's not a historical fact it's an opinion does it matter that one's sworn and one not and does the new summary judgment procedures play any role in that yeah as as far as i can say off off the top of my head the unsworn evidence is not fairly carefully at the bottom of these handwritten statements there's something that's pretty close to jury and we've got cases that say that's enough well your honor if you think that that that's enough then that answers that that question if you think that it's not enough than these than these statements are not to be credited what's your best case it's not enough uh i don't i don't have a case your honor we didn't we didn't make that argument on we just decidedly versus offshore under rule 56 and explain when it is enough and when it yes general rules apply in this context i will i will look at that case your honor uh summary judgment rules as as long as they also comply with with edpa apply equally to federal habeas let me just very quickly if i could impose on on the time here is weaver versus massachusetts i realize that was a different situation closing the courtroom or whatever versus juror bias does that have any impact here on the analysis of structural error and its effect and whether you have to show prejudice and all that kind of stuff i know it's an isd claim i know it's different but it's a new to u.s supreme court case and i always like to be sure i yes you understand what the the u.s supreme court says well also and and i want to be clear saying saying that something is structural error as as as that case shows as weaver v massachusetts doesn't end the inquiry okay let me make sure we're talking about the same thing when i say structural error you do not do a harm or prejudice analysis period analysis period once you find that there was bias that's the end of it that's what i mean by structural error what do you mean by structural error on on structural error your honor i mean the the the distinction that the court made in fullman on tv arizona versus things that happened during trial testimonial things and let me ask it this way and i mean there's your bias do we look do we do a harm analysis or not your honor it is our position that you always have to do a harm analysis 180 degrees from what i heard you say all right what's the best case that we do have to do a harm analysis when there's juror bias uh again your honor the the case off off the top of my head escapes me but the supreme court has twice uh one has came in in the name said that uh at the end of the day in habeas you have to show that there would have been a different result and so i think that that that line of cases weaver is on top of this which says when when you're in habeas thing things are not the same as on as on direct appeal and your argument here is it wouldn't matter whether we seated these jurors or not because he gets up and says give me the death penalty and well and he said otherwise i'm i'm going to kill a guard my my colleague here cited to a case where they didn't give the death penalty for killing a guard but it's quite different oh yeah when somebody threatens i'm going to do this right and so and when somebody is asking for it and saying he didn't just ask for it he went through the legal standard and he said under issue one there's this brief the prejudice form uh your honor even with the generous word limit i would think you could spend a page or two i did i do apologize your honor but uh i'll just say that i'm not going to complain that your brief was too short your honor and i'm not suggesting that's what judge owen is saying you know i'm just saying they're very lengthy analysis i mean it seems to me that's cute to be pretty key here uh your honor what what we think is is is key here and and so that you don't even have to reach that question but if we do yes your honor if you do then it is key are you saying we should if we you're saying yes we if we get that far we have to do harm now yes your honor okay all right if you have no further questions there were four points i wanted to touch on in rebuttal and obviously anything else that the court was interested in the first was that there is no deference under edpa to the pate claims in this case and it's very important in light of the questions you were asking about well is it wholly unreasonable to think that perhaps uh you know maybe it was a rational thing or maybe it was the segregation that was doing it or what have you and so i think it was your honor judge elbert who pointed out if there's deference then we have to worry about could a state court have reasonably reached that uh conclusion of that line of logic there is no edpa deference on the pate claim there is no 2254d deference on the pate claims they were presented for the first and only time in state post-conviction state habeas where they were procedurally defaulted and that is that there is no merits adjudication of the pate claim challenge to the conviction and the state's attempt to say that 2254d applies to an implied trial court finding where no one raised the due process claim in our submission fails as we break and it's it makes a big difference because then the question is just for this court objectively looking at the material does it raise a question and then when the judge finds out a trial that what they've been sold as a bill of goods and really the guy has this history and that everything may be quite different to what she thought does that raise a doubt should that should the system as a matter of due process when it's letting a man represent himself and try and get himself killed well the Supreme Court has not said we let him we're required to allow him so it's not us the court's just well it's two things you're required under Feretta to let him but the court has a obligation sua sponte to make that inquiry and make sure that this isn't someone who is incompetent if there's any doubt not because the evidence would said it would justify a finding not because it's shown by a preponderance just if there's a doubt the court has to look into it and make an adequate competency inquiry the second point your honor is related to that which is that there's no 2254d deference on the competency the substantive competency claim either this court held in the coa ruling that there was an implied competency finding but even an implied competency finding by the trial court is not an adjudication on the merits of a claim challenging the conviction because it was brought in violation of the constitution 2254d can only by its own terms can only apply to a claim that is brought on appeal or in post conviction in state court it has to be adjudicating on the merits the federal constitutional claim challenging the judgment of the state court on the basis it was unconstitutional that's the language of 2254a and d that's the structure of it and it's because 2254d is not designed to make state trial judges infallible in federal court it's designed to state court gets the first shot at ruling on a constitutional challenge to the conviction and that state court's ruling on that challenge is then respected in this court unless it can be shown to be wholly unreasonable or contrary and one other way of demonstrating that 2254d doesn't apply there is to think about the implications of Pelham versus Pinholster if the trial court's ruling on competence at the time of trial counts as a 2254d adjudication under Cullen versus Pinholster no matter what I bring in habeas I can't get an evidentiary hearing unless I prove that on the record in front of the trial court the trial court makes one of the d1 exceptions what's the problem with that the problem with that is that uh from time immemorial we've been able to bring habeas claims to say hey there's all this other evidence the trial court specifically designed to cut that out wasn't it not not that type of claim your honor it's the idea of a post-conviction substantive competency claim is going to be based on hey everyone thought the defendant was competent but we've just found out this terrific stuff that shows he was incompetent the state's interpretation would eliminate that possibility um are you I appreciate your very able briefing and argument I'm just curious you you're from the Louisiana capital assistance center how does does that work with doing Texas cases I was licensed in Texas before I was licensed in the center does Texas cases too yes we're on three at the minute not very many we're mainly a trial office I'm mainly a trial lawyer we do we don't do post-conviction in Louisiana we do some in Texas and Mississippi oh thank you is that because a lack of this is on our time thank you it's not your point is that because a lack of counsel in Texas or do you know um we've been asked to get involved uh this court recently appointed us in a fifth circuit case where the lawyer had resigned from practice and yes yes that's scary um but uh uh that part of its interest I mean I'm a Texas licensed lawyer I do cases in Mississippi frankly we don't do post-conviction work in Louisiana because we do a lot of consultation with other trial lawyers and if you do post-conviction work other trial lawyers won't talk to you so we don't do it in Louisiana and we do it in Texas and administrative not to do with the merits of your case anymore um as to the third of the four points I wanted to make in rebuttal the uh state makes its claim that only logical understanding of the proceedings and an ability to understand the options presented is required and relies on Godinez I can't emphasize enough that the state in our submission meaning no disrespect uh has read Godinez upside down that is the opposite of what that case stands for that case unequivocally stands for the proposition that just as in Reeves versus Payton and Godinez relies on Reeves versus Payton competence is going to look at the ability to make a rational choice and whether that's substantially impaired not just whether you can rationally understand the options in front of you and logically understand them but then make a crazy choice and this isn't about we might disagree with the decision but does that make it irrational it's about whether it's a substantial impairment of rational decision making from the mental illness and this court has resolved that question in Rumba versus Procunia this court laid out the three questions do you have a mental illness do you understand the options in front of you and if you do you still have to go to question number three are you substantially impaired in your ability to choose between them because of your mental illness and in Godinez what the ninth circuit had done was said that by applying the bare dusky standard the state court hadn't taken into account rational choice therefore the state court had applied the wrong standard and no deference was due and what the U.S. Supreme Court said was no the state court did apply dusky and that includes the rational choice what the ninth circuit thought it was adding on as a gloss was in fact incorporated into dusky and the court made that clear so I can't emphasize that enough because if this case is just about whether or not Perry Austin logically understood he was in a courtroom and who the judge was and who the lawyer was and what the charge was then we definitely lose all those competency claims because he clearly understood all of that the whole issue in this case is about the extent to which his mental illness substantially impaired his ability to make a rational choice that's what the trial court's procedure failed to inquire into that's why he was incompetent. You had a point for I was just going to say a lot of rational people make some pretty irrational choices they drive too fast jump out of airplanes they do things that are bad for their health I mean so anyway what was your fourth point? The fourth point was this issue of the court funded experts that was on page one of our reply brief it is important and the state again I'd misunderstood their brief I thought that they were agreeing on the procedural posture and it is important for both the paid claim and the trial counsel got into the case and within two months filed a motion for funding for defense counsel to have access to an expert and for that expert to have access to Mr. Austin for the preparation of the whole of the case in that pleading defense counsel did not say the word competence but defense counsel said it covers every aspect of the case and included issues like voluntariness I remember so it wasn't just mitigation it was the whole case including guilt issues but he didn't actually say the word competence just to be clear that was granted defense counsel then did not engage Dr. Brown had defense counsel engaged Dr. Brown and Dr. Brown had been acting on defense counsel's part the basic standards of practice for a defense lawyer would have involved providing Dr. Brown with records access to witnesses all of the tools for a proper assessment how did Mr. Brown Dr. Brown how was he chosen how was he how was he engaged well so we know only a limited amount from the record your honor because that occurs in part in the chambers meeting we don't have where we don't have the transcript um so at that point the judge says I'm not going to countenance this pareto request without a psychological assessment and we know that because the judge describes that at the start of the forerunner transcript that's really that and Dr. Brown's own report are our sources of information so the judge describes getting a report off Dr. Brown and Dr. Brown's report in its first few lines said I was appointed by the court to do a competency assessment so Brown's name that doesn't show up so after that chambers hearing uh there is no order in the record of the state court of the court appointing Brown do we know how Brown's name came up Brown's name first came up when defense counsel said I want funding for Brown for me to do my work as a defense lawyer then the court sort of stole Dr. Brown and said well I'm appointing him to do the competency assessment at which point he was unequivocally a court expert he wasn't defense counsel's expert he provided a report directly to the court it was given to the prosecution and the defense by the court he wasn't working for Mr. Arnold at all I'm not saying that that was improper no no no it just matters on who appointed him that's not a point and I'm asking that for my own because I don't know if it applies in this situation or not but it might and it matters uh and no I'm not saying that the judge wasn't allowed he stole him away from them and this is inappropriate the the the district court the federal district court erroneously held that defense counsel moved for a competency hearing and the defense counsel um had Dr. Brown do this it was so it's relevant to the ineffectiveness claim and in this court's COA opinion I believe early in the opinion uh the procedural history with Dr. Brown is correctly laid out but then later um there's a reference to Dr. Brown having been used by uh defense counsel so I think in dealing with the chronic claim you know he moved for a competency he got Dr. Brown for competence and so um it is important because defense counsel saw the problem was on notice there was a mental health problem conducted no investigation or anything else got the funding didn't engage the expert or do anything with that and we've cited the authorities saying that once you're on notice of mental health you've got to conduct an investigation and the court not defense counsel decided I need to get a competency assessment here and so to the extent that the state argues there was nothing here at all no one would have had a shadow of a doubt about Mr. Austin the trial court did it had a doubt it asked for a competency assessment and that competency assessment came back predicated on incomplete and materials materially false information and then at trial as Judge Haynes you you described at trial the trial court became aware that the competency report he'd gotten was predicated on materially incomplete and at that point the elephant in the room is he doing this because of depression as a mental illness or because he just doesn't want to live out his days in confinement that was the question that had to be answered. His own life should be taken. Right and these are the questions the question was there it had to be answered there was a procedure which we submit was inadequate in the trial for pre-trial the elephant was still in the room and then we get to trial and that whole procedure is entirely undermined and the question was never answered and that's the problem and that's why the principle in Pate stands for the requirement to conduct the hearing because otherwise then we're put in the trick bag of trying to prove in a non-protect fashion this nuanced question of impairment. Thank you Kent. Thank you very much.